**DEMPSTER MILL MFG. CO. v. BURNET,**
Commissioner of Internal Revenue.
No. 5044.

Court of Appeals of District of Columbia.
Argued Nov. 4, 1930.
Decided Jan. 6, 1931.

Louis B. Montfort, of Washington, D. C., for appellant.

Sewall Key, C. M. Charest, J. Louis Monarch, and A. G. Divet, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from the decision of the United States Board of Tax Appeals denying appellant certain deductions from its income tax return for the year 1920.

Appellant, a corporation, in 1894 purchased a business at Florence, Ala., which was engaged in the manufacture of wooden pumps and porch columns from yellow poplar lumber. For about ten years this business was conducted profitably as a branch of appellant corporation. By 1904 or 1905 the investment had reached $135,000. At that time the business was incorporated under the name of the Florence Pump & Lumber Company, as a subsidiary of the appellant corporation. In 1915 the name of the corporation was changed to the Florence Table & Lumber Company. At the time of incorporation, appellant transferred the assets of the business located at Florence, Ala., to the new subsidiary corporation for the sum of $135,000 of preferred stock, which represented the outstanding capital at that time. On March 1, 1913, appellant held $133,700 of the stock of the subsidiary; the balance being owned by one of the company's managers. At the time of the liquidation of the subsidiary corporation, on August 1, 1920, appellant company owned the entire stock of the subsidiary.

About 1905 the supply of yellow poplar in the vicinity of Florence, Ala., became depleted and it was determined to remove the plant to Memphis, Tenn., where it was thought that available lumber could be procured for the manufacture of pumps and porch columns. A large plant was established at Memphis, covering about 15 acres of land, with buildings, water system, and manufacturing plants, together with about 90 houses for the accommodation of employees. On August 1, 1920, the subsidiary was indebted to appellant corporation in the sum of $250,656.87, arising from advances made by appellant to the subsidiary.

It appears that up to 1913 the advances were made, according to the testimony of the president of the appellant corporation, for experimental purposes in attempting to solve the problem of successfully manufacturing the lumber in and about Memphis. Whether the advances were made for experimental purposes between 1913 and 1917, when the companies became affiliated, does not clearly appear. From 1917 to 1920, the business of the subsidiary corporation was affiliated with the appellant corporation, and the amounts advanced during those years were deducted in the returns of the appellant company for taxation; hence the present inquiry concerns only the amounts advanced by appellant up to 1917.

At the time of the liquidation of the subsidiary corporation in August and September, 1920, the appellant corporation acquired and assumed the assets and liabilities of the subsidiary at a net valuation of $183,302.85. This, deducted from the amount advanced by the appellant of $250,656.87, left a balance of $67,354.02, which appellant sought to deduct in its return for 1920. It also deducted as a loss the sum of $135,000, representing its investment in the stock of the subsidiary.

It was found by the Board that from 1909 to 1917 the appellant and the subsidiary filed separate reports, and appellant did not secure any benefit of any deduction on account of the operating losses of the subsidiary. As above indicated, for the years ending November 30, 1918 and 1919, consolidated returns were filed, and appellant was given the benefit of the subsidiary's operating loss.

The Board, in deciding that appellant was not entitled to the deductions claimed, said, "The evidence does not establish a loss. Before a deduction can be taken for loss in respect of property acquired prior to March 1, 1913, the basis of loss must be established, and such basis is the lower of the figures of the value of the asset on March 1, 1913, and the actual cost. United States v. Flannery, 268 U. S. 98, 45 S. Ct. 420, 69 L. Ed. 865; McCaughn v. Ludington, 268 U. S. 106, 45 S. Ct. 423, 69 L. Ed. 868. Here the evidence indicates that neither the assets nor the stock of the Florence Company was valuable on that date. The loss, if any there was, was sustained prior to March 1, 1913, and the formal dissolution in 1920 of the Florence Company gave the Dempster Company no new opportunity for a deduction. We say

this notwithstanding the oral testimony of a witness primarily interested in the event that the Florence stock was on March 1, 1913, worth par, for in the light of the other evidence we must reject this witness' statement as an unsupported opinion."

The only witness who testified directly as to the value of the stock of the Florence Company on March 1, 1913, was C. B. Dempster, for forty years president of appellant company. It was his testimony that was rejected as being the testimony of an interested witness. We think it was error to disregard the testimony of this witness, inasmuch as it stands uncontradicted. The rules of evidence, in a hearing before the Board of Tax Appeals, are not different from those applied to civil procedure in the courts, except that the statutes and regulations should be construed liberally in favor of the taxpayer.

■ Inasmuch as the evidence discloses that the advances were made by appellant company to the subsidiary prior to 1913 and by reasonable inference prior to 1917, for experimental purposes, these advances must be treated as capital items. Gilliam Mfg. Co., 1 B. T. A. 967; Goodell-Pratt Co., 3 B. T. A. 30; Beaumont Co., 3 B. T. A. 822; J. H. Sanford, 2 B. T. A. 181; Consolidated Mutual Oil Co., 2 B. T. A. 1067. That the moneys were advanced for experimental purposes is evidenced by the testimony of C. B. Dempster and other witnesses, to the effect that the experiments to successfully manufacture the lumber in and about Memphis were continued up to 1917. That the moneys advanced were considered as capital items is evidenced by the fact that at no time did the appellant company or the subsidiary seek to charge them off as expense items for income tax purposes. Indeed, this was the view of the Board where in its findings of fact it said: "Experiments were conducted upon various woods with a view of finding one which would be workable. The petitioner advanced the money necessary to conduct these experiments and charged it to the subsidiary on its books."

The case turns, it will be observed, upon the decision of the Commissioner and the Board, that the stock and other assets of the subsidiary were without value on March 1, 1913. On this hypothesis it was held that no loss was suffered in 1920, since, under section 202(a) of the Revenue Act of 1918, 40 Stat. 1057, 1060, loss or gain for the year in which liquidation or sale occurs is to be determined by comparison with the value in 1913.

Inasmuch as the evidence is most indefinite as to the exact value of the assets of the subsidiary corporation on March 1, 1913, and as the evidence discloses that it had considerable value at that time through its outstanding stock, its large operating plant, and other assets, and in view of the exclusion of the testimony of witnesses on the technical ground that the books of the company were the best evidence, we are of the opinion that substantial justice in this case demands a new trial where the parties can be given an opportunity to adduce such testimony as they may have to offer pertaining to the real issues involved.

The same is true as to another deduction claimed by appellant company, growing out of certain bonuses paid its employees during the year 1920. That turns upon the sufficiency of the testimony of C. B. Dempster, president of appellant company, who testified that the stock during that period had a book value of $150 per share. Testimony was adduced showing stock to have been sold at forced sale, or under conditions equivalent to a forced sale, for much less than that price. The Commissioner based his allowance upon the par value of the stock at $100 per share. The evidence as to this phase of the case is rather indefinite and uncertain, and as to this we are also of the opinion that substantial justice requires a further investigation by the Board.

The decision of the Board, therefore, is reversed, and the cause is remanded, with instructions to grant a full and complete new trial of the case.