J. Edward OBERMEYER and Louise M. Obermeyer, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5482.

United States District Court
S. D. Ohio, W. D.

Sept. 21, 1966.

William B. Petermann, Cincinnati, Ohio, for plaintiffs.

Joseph P. Kinneary, U. S. Atty., Columbus, Ohio, and E. Winther McCroom, Asst. U. S. Atty., Cincinnati, Ohio, Henry G. Zapruder, Atty., Justice Dept., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOHN W. PECK, District Judge.*

This matter has been submitted on the cross-motions of the parties for summary judgment, and it is concluded that the case is in proper posture for summary judgment determination.

A refund is sought by plaintiffs for federal income taxes assessed and collected for the taxable year 1957. Plaintiffs agree that the questions presented are accurately set forth in the defendant's brief as follows:

"1. Were advances made by the taxpayer to F. & E. Finer Foods, Inc., bona fide loans or contributions to capital?

"2. If these advances were bona fide loans, were they related to taxpayer's business as general manager and meat cutter of Obermeyer Foods, Inc.?"

The facts as presented by stipulation, depositions and an affidavit establish that the plaintiff J. Edward Obermeyer (hereinafter "Taxpayer;" plaintiffs are husband and wife and determination of the issues depend upon the actions and statements of the husband) had owned and operated a retail meat and grocery store as a proprietorship under the name of Obermeyer Foods from 1941 until July 2, 1956. On that day, he transferred all assets and liabilities thereof to Obermeyer Foods, Inc., a corporation

* Now Circuit Judge.

formed and wholly owned by Taxpayer. From that date forward, he has been employed as president, general manager, and meat cutter and has served as a member of the board of directors of the corporation. On April 2nd of the same year he and one Frank Antenucci formed a second corporation known as F. & E. Finer Foods, Inc., whose only place of business was in Swifton Shopping Center, Hamilton County, Ohio.

Taxpayer and Antenucci each paid $5,000 for fifty shares of stock in the newly formed corporation and there were no other shareholders. Subsequently, advances were made by Taxpayer and Antenucci to F. & E. Finer Foods, Inc. as follows:

| DATE | TAXPAYER | FRANK ANTENUCCI |
|---|---|---|
| September, 1956 | $7,500 | $7,500 |
| January 23, 1957 | 1,000 | 1,000 |
| March 7, 1957 | 2,000 | 2,000 |
| June 26, 1957 | 1,750 | 1,750 |

In return each received a written instrument purporting to be a promissory note payable on demand with interest at 6% *after maturity*. These advances were unsecured and no interest was ever paid on account of them to either man. Taxpayer made the first three advances with the expectations they would be repaid out of F. & E. Finer Foods, Inc. profits and the last after the cessation of its operations in order to preserve "the good name of Obermeyer Foods, Inc.," and to protect his investment in Obermeyer Meats, Inc., a separate business entity operated by taxpayer.

Taxpayer here seeks to deduct as ordinary business bad debts the amount of these advances under Section 166 of the Internal Revenue Code of 1954. Treasury Regulation on Income Tax, Section 1.166–1(c) provides in part that, "Only a bona fide debt qualifies for purposes of Section 166 * * *. A gift or contribution to capital shall not be considered a debt for purposes of Sec. 166 * * *."

The burden is upon the Taxpayer to establish that the advances were valid debt (*Moughon v. Commissioner of Internal Revenue*, 329 F.2d 399 (6th Cir. 1964)) and it is here determined that the Taxpayer has failed to sustain such burden. The advances do not fall within the definition of a "classic debt" set forth in Gilbert v. Commissioner of Internal Revenue, 248 F.2d 399 (2nd Cir. 1957), and the absence of a fixed maturity date which under the written instruments hereinabove mentioned would have started the running of interest has been called a "most significant factor" in considering the character of an advance. (Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (6th Cir. 1956); United States v. Title Guarantee & Trust Co., 133 F.2d 990 (6th Cir. 1943)).

It is further clear that in making these advances the Taxpayer intended to incur the risks of a corporate venture. It is clear that he intended to receive a return from the profits of the new venture, and that he did not simply advance money with the expectation of return regardless of the success or failure of the undertaking. These advances were made without security and Taxpayer ignored all of the normal creditor safeguards, even subordinating his claim to those of general creditors, thus further indicating that the advances were capital contributions and not debts owing to him. It is further noted that the two 50% shareholders made identical advances contemporaneously, on one occasion Antenucci borrowing $7,500 from taxpayers so that they "could both put

equal amounts of money into the business."

In view of the fact that the first of the questions above set forth is determined affirmatively for the defendant, it becomes unnecessary to pass to a consideration of the second question, and an Order sustaining defendant's motion for summary judgment and denying plaintiffs' cross-motion for summary judgment may be presented.