OLIVER V. BENTLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
BENTLEY v. COMMISSIONER
Docket No. 14660-87.
United States Tax Court
T.C. Memo 1988-444; 1988 Tax Ct. Memo LEXIS 469; 56 T.C.M. (CCH) 215-3; September 19, 1988. Oliver V. Bentley, pro se. Eileen Kato, for the respondent. GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986. [1]
*471 Respondent determined a $ 4,576 deficiency in petitioner's 1984 Federal income tax. Respondent also determined that petitioner was liable for additions to tax under section 6653(a)(1) in the amount of $ 228, and section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment of $ 4,576. After concessions by respondent, the issues for decision are: (1) whether petitioner is entitled to Schedule C expenses of $ 5,097.18; (2) whether petition is entitled to a dependency exemption for an unrelated individual; (3) whether petitioner is entitled to claim head of household filing status; and (4) whether petition is liable for additions to tax under section 6653(a). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided in Seattle, Washington when he filed his petition. For convenience, we will combined the specific findings of fact and opinion for each issue.
Schedule C Expenses
During the Spring of 1984, petitioner and Thomas Cushing, his "foster father," traveled extensively throughout Europe. Before embarking on their trip, petitioner *472 and Mr. Cushing planned their itinerary by consulting various travel references such as "Let's Go Europe." They used a travel agency to make their transportation arrangements. During their trip they visited typical tourist attractions, as well as night clubs and beaches. They recorded the more notable places of interest in a diary and took many photographs of these places. Petitioner testified that in photographing their trip, they used nearly 100 rolls of film, each roll having 36 exposures. Upon their return from Europe, petitioner and Mr. Cushing developed the film, categorized the photographs, enlarged some of the prints, and attempted to sell the enlargements. The sale of photographs in 1984 totaled $ 30. No sales were made in subsequent years. At the same time, petitioner and Mr. Cushing decided to arrange student tours to Europe. They contacted various youth groups in an attempt to stimulate interest in their proposed student tours. They also met with a travel agent sometime in the early part of 1985 and prepared a tour package for June 18 through July 16, 1985. To promote the student tours, an offset color flyer was printed and posted in various schools throughout *473 the Seattle area. The flyer advertised a 29-day trip throughout Europe by rail at a price of $ 1,985. The trip included stops in Belgium, England, France, Greece, Italy, Germany, Monaco, and Switzerland. A detachable reservation form was printed on the lower half of the flyer to be mailed to "Adventure Club International, 7112 Linden Ave. North, Seattle, Washington 98105, Attn: Tom Cushing." In order for the tour business to be marginally profitable, petitioner and Mr. Cushing estimated they would need 20 students per tour. For the business to be highly profitable, they would have to conduct two tours a summer with 40 to 50 students in each tour. The tour planned for 1985 was not conducted because only eight students responded to the flyer. To date, neither petitioner nor Mr. Cushing has conducted any student tours. On Schedule C -- Profit or (Loss) From Business or Profession attached to his return, petitioner reported gross income of $ 30 from his business "Adventure Club International." On this schedule petitioner indicated that his main business activity was "Travel Guide" and the services he provided were "Travel Photos -- Youth Tours." From the $ 30 gross income, petitioner *474 deducted $ 5,127.18 of travel and entertainment expenses, resulting in a net loss of $ 5,097.18. Petitioner claims that he actually incurred approximately $ 7,500 of expenses in connection with his European trip, but that only $ 5,127.18 of the expenses were business related. Petitioner could not recall how he arrived at the amount of his deducted expenses because Mr. Cushing prepared his income tax return. [2] Respondent disallowed in full the deducted travel and entertainment expenses because the expenses were not incurred in carrying on a trade or business under Section 162. At trial, respondent conceded that petitioner was entitled to deduct expenses up to the $ 30 of gross income he reported from the sale of his travel photographs. [3] Inasmuch as petitioner claims that the purpose for their trip to Europe was to investigate the prospects of operating a student tour business, and to take travel photographs which could be sold, we will discuss the applicability of sections 162 and 212 [4] to each of these claimed business activities. *475 It is well established that deductions are a matter of legislative grace, and petitioner has the burden of proving that he is entitled to any deductions claimed on his return. Welch v. Helvering,290 U.S. 111, 115 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Deputy v. du Pont,308 U.S. 488, 493 (1940); Rule 142(a). Ordinary and necessary traveling expenses incurred while away from home in the pursuit of a trade or business are deductible. Sec. 162. The phrase "trade or business," however, presupposes an existing business. Stanton v. Commissioner,399 F.2d 326, 329 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Koons v. Commissioner,35 T.C. 1092, 1101 (1961). Expenses incurred in investigating a potential new business, or in preparing to enter a business are not deductible as expenses incurred in the pursuit of a trade or business under section 162. Richmond Television Corp. v. United States,345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other issues 82 U.S. 68 (1965); Dean v. Commissioner,56 T.C. 895, 902-903 (1971); *476 Koons v. Commissioner, supra;Frank v. Commissioner,20 T.C. 511, 513 (1953). Similarly under section 212, a deduction is permitted for all the ordinary and necessary expenses incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. However, the expenses associated with a preliminary search for a potential business opportunity are not deductible expenditures under section 212. Dean v. Commissioner, supra;Frank v. Commissioner, supra.
Although we have our doubts, for the sake of argument we conclude that petitioner's travel to Europe was undertaken to investigate the prospects of entering into the student tour business. Therefore, the expenses he incurred were associated with his search for a potential business opportunity and are not deductible under section 162 or section 212. With regard to petitioner's travel photography activity, respondent has allowed a deduction to the extent of the income from this activity. Sec. 183(b). Section 183 provides generally that with respect to an activity not engaged in for profit, *477 deductions are allowable only to the extent of income from such activity. Therefore, in order for petitioner to be entitled to deductions for any additional expenses, he must show that the activity to which such expenses relate was an activity engaged in "with an actual and honest objective of making a profit." Capek v. Commissioner,86 T.C. 14, 36 (1986). The test is whether the taxpayer had an actual and honest profit objective in participating in the activity generating the expenses claimed as deductions. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While the taxpayer's expectation of profit need not be reasonable, there must be a good faith objective of making a profit. Allen v. Commissioner,72 T.C. 28, 33 (1979). Whether the requisite profit objective exists is determined on the basis of all the surrounding facts and circumstances. Sec. 1.183-2(b), Income Tax Regs.; Golanty v. Commissioner,72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Dunn v. Commissioner,70 T.C. 715, 720 (1978), *478 affd. on another issue 615 F.2d 578 (2d Cir. 1980). Greater weight is given to objective facts than to the taxpayer's mere statement of his intent. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra at 645. Section 1.183-2 of the regulations lists the following objective factors which should be considered in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the success of the taxpayer in carrying on other similar or dissimilar activities; (5) the taxpayer's history of income or losses with respect to the activity; (6) the amount of occasional profits which are earned; (7) the financial status of the taxpayer; and (8) elements of personal pleasure or recreation. Based on a review of the facts in this case, we find that petitioner has clearly failed to prove that his travel photography constituted an activity engaged in for profit. We are convinced that petitioner never intended to actively pursue the selling of travel photographs as *479 a business with a profit motive. Petitioner and Mr. Cushing made only half-hearted attempts to sell photographs of their European vacation. It is clear to us that this endeavor was not contemplated before their trip, but was an afterthought. Therefore, taking into account respondent's concession, respondent is sustained on this issue.
Dependency Exemption
In 1980 the King County Department of Social and Health Services placed petitioner, who was then 14, in the custody of Thomas Cushing as a foster child. Mr. Cushing never legally adopted petitioner. By law, the custody relationship terminated on January 21, 1984 when petitioner attained the age of 18. At trial, petitioner referred to Mr. Cushing as his "father" and/or "foster father." During 1984 petitioner was employed full-time as a silk screener by Balliet Screen Graphics. On his 1984 return, petitioner reported $ 8,454.16 of wage income and net rental income of $ 2,165.27. He also claimed Mr. Cushing as a dependent. In this regard petitioner reported that (1) Mr. Cushing lived the entire year in his home, (2) Mr. Cushing had income of $ 1,000 or more, and (3) he furnished more than one-half of Mr. Cushing's *480 support. Once examination of his return began, petitioner claimed that Mr. Cushing earned only $ 688 of income in 1984. Early in 1984, Mr. Cushing arranged for petitioner to lease a ten-bedroom house located at 7112 Linden Avenue North, Seattle, Washington. Petitioner sublet rooms in the house to tenants on a month-to-month basis. [5] Prior to moving into the rooming house, petitioner and Mr. Cushing lived in a trailer parked behind the house. When bedrooms became available, they moved into the house, each occupying a separate bedroom. Petitioner paid rent, but the record is unclear as to whether Mr. Cushing paid rent or lived there rent free, or whether petitioner paid Mr. Cushing's rent. Petitioner estimated the fair rental value of each bedroom to be $ 200 per month. Mr. Cushing maintained his own automobile and paid for the automobile insurance. Mr. Cushing also paid for his own telephone service, his own life and health insurance, and he maintained his own checking account. Petitioner and Mr. Cushing ate their meals out of the house most of the time. Petitioner estimated *481 that their weekly food expense was approximately $ 140 per week, $ 70 of which was attributable to Mr. Cushing. Petitioner paid most of their food expenses but occasionally Mr. Cushing paid for their meals. Petitioner estimated that they spent between $ 50-$ 100 per week for recreation and entertainment, which included tickets to movies, the theater, and concerts. Petitioner financed the bulk of their $ 1984 trip to Europe, however, Mr. Cushing made a small contribution. Also during 1984, petitioner and Mr. Cushing spent occasional weekends in Canada. It is not clear, however, who paid the expenses for the trips to Canada. Section 151 allows a deduction for each dependent as defined in section 152. Because Mr. Cushing is not petitioner's legal father, and inasmuch as "foster father" is not one of the relationships specified in paragraphs (1) through (8) of section 152(a), Mr. Cushing must meet the requirements of section 152(a)(9) in order to qualify as a dependent. In that regard, petitioner must show that he provided more than one-half of Mr. Cushing's support, that his home was Mr. Cushing's principal place of abode for the entire taxable year, and that Mr. Cushing was *482 a member of his household. Sec. 152(a)(9). Based upon the record, we find that this situation is not one of dependency within the intent of the statute. The relationship between the parties is one of mutual dependency. Each contributes something the other party needs and each receives a benefit from a mutually satisfactory arrangement. It is not necessary to attempt to weigh the comparative worth of each party's contribution to the arrangement and say which is greater. Moreover, it is not necessary that we attempt to define more exactly the scope of the term "dependent" in relation to this and similar situations. See Bombarger v. Commissioner,31 T.C. 473 (1958). Although petitioner contends that in prior years respondent has allowed the dependency exemption deduction claimed for Mr. Cushing, it is well established that the acceptance of prior returns does not create estoppel as to later years. Meneguzzo v. Commissioner,43 T.C. 824 (1965). Therefore, we conclude that petitioner is not entitled to a dependency exemption deduction for Mr. Cushing in 1984, and respondent is sustained on this issue.
Head of Household Filing Status
*483 Petitioner claimed head of household filing status on his 1984 return. Section 2(b)(1) provides that an individual shall be considered head of a household if he is not married at the close of his taxable year, and maintains as his home a household which constitutes for more than one-half of the taxable year, the principle place of abode of a person who is a dependent of the taxpayer, provided the taxpayer is entitled to a deduction for such person under section 151. Because we have held that petitioner is not entitled to a deduction for Mr. Cushing under the provisions of sections 151 and 152, petitioner is not entitled to head of household filing status. Therefore, respondent is sustained on this issue.
Additions to Tax for Negligence
The final issue is whether petitioner is liable for the additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that he is not liable for the additions to tax. Luman v. Commissioner,79 T.C. 846, 860-861 (1982). For purposes of section 6653(a), negligence is the lack of due care or failure to do what a reasonable and ordinarily *484 prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). We think the facts demonstrate that petitioner was indeed negligent. Irrespective of respondent's concession with regard to petitioner's alleged Schedule C business activities, we believe that petitioner has attempted to convert the expenses of a European vacation into business expenses. In light of the surrounding facts, no reasonable person would have claimed such expenses as a business deduction. Moreover, petitioner's claimed dependency exemption and head of household filing status are equally untenable under these circumstances. We therefore sustain respondent's determination as to these additions to tax. To reflect respondent's concession, Decision will be entered under Rule 155.
Footnotes
1. Hereinafter, all section references are to the Internal Revenue Code in effect in the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner did not call Mr. Cushing as a witness at trial due to Mr. Cushing's incarceration in a Washington State Correctional Institution. The record was kept open, however, to allow petitioner the opportunity of obtaining the necessary information from Mr. Cushing. Mr. Cushing's statement was received into evidence as Joint Exhibit 4-C by Order dated April 28, 1988. The record in this case was closed on May 11, 1988. ↩
3. We surmise that respondent considered petitioner's travel photography sales as an activity not engaged in for profit and allowed a deduction to the extent of income from such activity pursuant to section 183(b)(2). ↩
4. Although petitioner does not rely on any particular Code section in support of his claim, we assume that he is relying on either section 162 or section 212. ↩
5. Petitioner reported rental income and expenses on Schedule E -- Supplemental Income Schedule. ↩