**Irving GROSSWALD, Appellant,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services, Appellee.**

No. 1250. Docket No. 81–6020.

United States Court of Appeals, Second Circuit.

Argued April 22, 1981.

Decided June 22, 1981.

Bruce Alan Miller, New York City, for appellant.

Jo Davis, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. for the Eastern District of New York, Miles M. Tepper, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

This case raises the question in a Social Security context whether a former bank employee is engaged in a "trade or business" as that term is construed under section 162 of the Internal Revenue Code when he enters into a consulting agreement which provides that he can consult only for his former employer and not for others. The Tax Court has answered the question negatively in a tax context in *Barrett v. Commissioner*, 58 T.C. 284 (1972), relying on Justice Frankfurter's formulation in his concurring opinion in *Deputy v. du Pont*, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940), that " 'carrying on any trade or business,' within the contemplation of [section 162], involves holding one's self out to others as engaged in the selling of goods or services." Appellant argues to us, as he did to the court below, that "others" cannot include the singular "another." We agree with the United States District Court for the Eastern District of New York, Jack B. Weinstein, Chief Judge, that one who holds himself out to another—here, the bank for which he formerly had worked—as engaged in the selling of goods or services, is carrying on a "trade or business" within the meaning of section 162 of the Internal Revenue Code, and therefore also for purposes of Social Security retirement insurance benefits, under 42 U.S.C. § 411. Accordingly we affirm the district court's decision denying review of the determination of the Social Security Administration that, because of his net earnings from self-employment as exclusive consultant to the bank, appellant was not entitled to Social Security retirement benefits.

The facts are not in dispute. On July 1, 1978, appellant, upon reaching the age of 65, retired from his position as administra-

tive vice president and senior lender for the Sterling National Bank and simultaneously entered into a consulting agreement with the bank. Pursuant to that agreement, in which appellant was denominated "an independent contractor," he was paid $30,000 per annum to perform "special consulting services" for Sterling, and Sterling only. This he did, until the contract was terminated in February 1980, and during that time he did not hold himself out to any individual or institution other than Sterling as available to render banking or other services. The Social Security Administration refused to pay appellant retirement benefits for the period July 1978 through February 1980, finding that his benefits had been completely offset by his excess earnings from self-employment. Grosswald's contention is that he was not in a "trade or business" during that period and that therefore his remuneration did not constitute "net earnings from self-employment" which may be offset against Social Security retirement benefits.

The statutory structure, while seemingly complicated, is really quite simple. Only "excess earnings"—not dividends, interest, or other forms of income—are offset against retirement benefits, under 42 U.S.C. § 403(b). "Excess earnings" consist of 50% of either "wages for services rendered" or "net earnings from any self-employment" that are above certain statutory limits, exceeded here. See id. § 403(f)(3), (5). The Social Security Administration determined, and the parties do not dispute, that Grosswald was not an employee earning "wages" after July 1978. Rather, the statutory issue is whether the $30,000 per annum consulting contract remuneration constituted "net earnings from self-employment." That term is defined in 42 U.S.C. § 411(a) as the gross income, minus deductions, "derived by an individual from any

trade or business carried on by such individual." For the meaning of "trade or business," 42 U.S.C. § 411(c) refers us to the use of the term in section 23 of the Internal Revenue Code of 1939, which corresponds to section 162 of the Internal Revenue Code of 1954.[1] However, "trade or business" is not defined in section 162 or elsewhere in the Internal Revenue Code. It is a term of art which has many different applications in the Code and which has had various meanings depending on time and context. See 4A Mertens, *Law of Federal Income Taxation* § 25.08 (1979); 5 Mertens, *supra*, § 28.31.

Preliminarily, we note in passing the Secretary's contention that "trade or business" in the Social Security Act might have a different meaning under that act than it has under the Internal Revenue Code. The Secretary argues in his brief that the term "is not defined solely by resort to Tax Court decisions" but rather must be examined "in the Social Security context." However persuasive such an argument might be in other situations, we are not persuaded by it in this case, where there is an explicit incorporation of the Internal Revenue Code by the Social Security Act, see 42 U.S.C. § 411(c). Presumably the Secretary makes this argument because the Tax Court decisions, or at least some of them, do run against his position. But however much weight those cases may be entitled to, and they are certainly deserving of our most serious consideration, they are not binding upon us. And, to the extent that they hold that a consultant is not engaged in a "trade or business" when he is working exclusively for one concern, we disagree with them.

The theory that a person can be deemed to be carrying on a "trade or business" only if he "holds himself out" to the public by offering goods or services originated in Justice Frankfurter's concurring opinion in

---

1. 26 U.S.C. § 162 provides in part:

   (a) In general.

   There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . .

Section 162 corresponds to section 23(a)(1)(A) of the 1939 Code. See 26 U.S.C. § 7852(b) (references to 1939 Code in other statutes shall be deemed to be references to corresponding sections of 1954 Code); 20 C.F.R. § 404.1066 (1980); *Clevenger v. Weinberger*, 375 F.Supp. 821, 823 (W.D.Mo.1974).

*Deputy v. du Pont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940). There, speaking to the difference, for tax purposes, between expenses incurred in conducting a "trade or business" and those incurred in managing one's own investments or in other profit-seeking activity, Justice Frankfurter said:

> To avail of the deductions allowed by § 23(a) [now § 162], it is not enough to incur expenses in the active concern over one's own financial interest. "... carrying on any trade or business," within the contemplation of § 23(a), involves holding one's self out to others as engaged in the selling of goods or services. This the taxpayer did not do. Expenses for transactions not connected with trade or business, such as an expense for handling personal investments, are not deductible.

*Id.* at 499, 60 S.Ct. at 369. Several circuit court and Tax Court cases have developed Justice Frankfurter's language, which, even though it was a single justice's opinion, has been taken by at least one commentator to constitute the view of the Supreme Court. 5 Mertens, *supra*, § 28.31, at 123 & n.9. In *Stanton v. Commissioner*, 399 F.2d 326, 329–30 (5th Cir. 1968), for example, the court, citing Justice Frankfurter's language, held that the taxpayer could not deduct certain expenses under section 162 because his "irregular and sporadic" efforts as an inventor did not rise to the level of "trade or business." And in *McDowell v. Ribicoff*, 292 F.2d 174, 177–78 (3d Cir.), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961), citing the same language, the court held that the taxpayer's activities as executrix of her aunt's estate did not constitute a "trade or business." On the same reasoning, the Tax Court has held that a professional gambler—even though he gambled regularly, with a profit motive, and used his winnings to support his family—was not in a "trade or business" because he was not holding himself out to others as engaged in the selling of goods or services. *Gentile v. Commissioner*, 65 T.C. 1 (1975).

The Tax Court case closest to ours, however, is *Barrett v. Commissioner*, 58 T.C. 284 (1972). That case involved an executive officer whose employment contract provided that upon completion of his full-time services he would be paid $12,000 a year on the condition that he both render advisory and consulting services to the employer whenever reasonably requested and not compete with the employer—a contract essentially the same as appellant Grosswald's in the instant case. The issue in *Barrett* was whether the taxpayer owed self-employment tax under section 1401 of the Code, which, like the Social Security retirement benefits provision at issue here, incorporates by reference the interpretation of the term "trade or business" as it is used in section 162 of the Code, *see* 26 U.S.C. § 1402(c). The Tax Court looked to the terms of Barrett's contract and, relying on Justice Frankfurter's concurring opinion in *Deputy* and the *McDowell* case, held that, because the noncompetition clause prohibited Barrett from offering his services "to others," he was not engaged in a "trade or business." 58 T.C. at 289–90.[2] *Barrett* was distinguished in the subsequent case of *Barnett v. Commissioner*, 69 T.C. 609 (1978), where the Tax Court held that a bank executive who had retired and simultaneously entered into a $1,000 per month consulting contract, which prohibited him from rendering similar services to any business that competed with the bank, *was* engaged in a "trade or business." The court explained that this was because the consulting contract apparently allowed the taxpayer to render services to banks in towns other than the one in which the employing bank was located, and the taxpayer had not proved that he had *not* held himself out to such other banks. In other words, to prove that he was not engaged in a "trade or business," the taxpayer had to demonstrate either that he was contractually prohibited from holding himself out to other banks or that he did not in fact do so. *Id.* at 613. Appellant Grosswald here clearly falls with-

---

2. The fact that Barrett actually had not rendered any consulting services to the company, and had not been requested to do so, was immaterial to its holding, the court said. *Barrett v. Commissioner*, 58 T.C. 284, 289 (1972).

in *Barrett* rather than *Barnett,* not only because his contract prevented him from holding himself out to banks other than Sterling, but also because he in fact proved beyond peradventure that he did not do so and that he rendered his services exclusively during the period in question to Sterling.

Nevertheless, in our view *Barrett* was erroneously decided. It makes little sense to distinguish between a person who "holds himself out" to only one employer (and agrees to work for no one else) and a person who "holds himself out" to more than one employer. Justice Frankfurter surely did not intend such a distinction, even though he referred to "others" in his *Deputy* opinion; rather, it is clear that he was distinguishing between managing one's own investments and rendering services or selling goods to one or more others. We simply do not see the logic of the *Barrett* distinction. Nothing in the Code suggests it. Nothing in the case law of courts other than the Tax Court leads to such a result.[3]

While we cannot say that the theory of *Barrett* is "as thin as the homoeopathic soup that was made by boiling the shadow of a pigeon that had been starved to death," *see Beamsley v. Commissioner,* 205 F.2d 743, 748 (7th Cir. 1953) (attributed to Abraham Lincoln), we have to say that we find it unpalatable.

Judgment affirmed.

---

**3.** Appellant here relies upon *Snow v. Commissioner,* 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336 (1974), which concerns the deductibility under section 174(a)(1) of the Code of "experimental expenditures ... paid or incurred ... in connection with [a] trade or business ...." It is true that the Court in *Snow* did refer to Justice Frankfurter's concurring opinion in *Deputy v. du Pont,* 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940), but the Court expressly distinguished section 174(a)(1) from section 162(a), considering that the latter is "more narrowly written" and that section 174 was enacted "to dilute some of the conception of 'ordinary and necessary' business expenses under § 162(a) ... [as] adumbrated by Mr. Justice Frankfurter." 416 U.S. at 502–03, 94 S.Ct. at 1877–78. Section 162 and the other 60 or so sections of the 1954 Code referring to "trade or business" were thought, in Justice Douglas's opinion for the *Snow* Court, to be "not helpful." The reference to *Snow* under these circumstances seems hardly apposite, much less helpful to appellant.