Richard GAJEWSKI, Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 347, Docket 83-4121.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1983.
Decided Dec. 15, 1983.

or November 3, 1965.

Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Bruce R. Ellisen, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellant.

James W. Shea, North Branford, Conn., for petitioner-appellee.

Before MANSFIELD, PIERCE and McGOWAN,* Circuit Judges.

MANSFIELD, Circuit Judge:

The issue raised by this appeal pursuant to 26 U.S.C. § 7482 by the Commissioner from a decision of the United States Tax Court is whether a full-time gambler for his own account can be engaged in a "trade or business" within the meaning of 26 U.S.C. § 62(1) even though he offers no goods or services to others.[1] If so, he could deduct his net gambling losses for purposes of arriving at his adjusted gross income subject to tax, regardless whether his gambling losses exceeded his winnings, and thus avoid a minimum tax that would otherwise be due on excess itemized deductions pursuant to 26 U.S.C. § 56(a).[2] The Tax Court held in favor of the taxpayer. We reverse.

The facts have been stipulated. Richard Gajewski was a full-time gambler in 1976 and 1977, who bet solely for his own account and did not act as a bookmaker or hold himself out in any way as offering goods or services to others. His only income was from pari-mutuel wagering on jai-alai. In each of the years in question he incurred gambling losses equal to or in excess of his winnings. For the purpose of determining income subject to federal income tax such losses are deductible up to the amount of winnings under 26 U.S.C. § 165(d).[3] Gajewski, however, filed federal

---

\* Of the United States Court of Appeals for the District of Columbia, sitting by designation.

1. Title 26 U.S.C. § 62(1) provides:
    "SEC. 62. ADJUSTED GROSS INCOME DEFINED.
    "For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:
    (1) *Trade and business deductions.*—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee."

2. The applicable version of 26 U.S.C. § 56 was added by § 301(a), Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487, and amended by § 301(a) Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, provided in pertinent part:

"SEC. 56. IMPOSITION OF TAX.
    (a) *General Rule.*—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—
    (1) $10,000, or
    (2) the regular tax deduction for the taxable year (as determined under subsection (c))."

3. Title 26 U.S.C. § 165(d) provides in pertinent part:
    "SEC. 165. LOSSES.
        \*      \*      \*      \*      \*      \*
    (d) *Wagering Losses.*—Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."

tax returns on which he took his entire net losses for each year as itemized deductions in arriving at his adjusted gross income.

The Commissioner assessed deficiencies against Gajewski, claiming that gambling losses are itemized deductions subject to the minimum tax on tax preferences, 26 U.S.C. § 56. He determined that $18,612 was owing for 1976, and $10,667 for 1977. He also assessed an additional tax of $4,653 for the year 1976 pursuant to 26 U.S.C. § 6651(a)(1). In so doing the Commissioner relied on *Gentile v. Commissioner,* 65 T.C. 1 (1975), which held that a taxpayer engaged in gambling solely for his own account, as distinguished from one operating a gambling establishment or bookmaking service, is not engaged in a trade or business because he does not hold himself out to others as offering goods or services, which the Tax Court found to be a necessary element of any trade or business.[4] A contrary ruling would have meant that gambling losses could be "trade or business" deductions under § 62 of the Internal Revenue Code.

The latter constitute "adjustments to gross income," rather than itemized (or "below the line") deductions, and are expressly excluded from the definition of tax preferences subject to the minimum tax. 26 U.S.C. § 57(b)(1)(A).[5]

Gajewski filed a petition for redetermination of the deficiencies in the Tax Court. In light of *Gentile, supra,* he did not argue that he was engaged in a trade or business. However, while his petition was pending, the Tax Court, in a 15 to 4 decision in *Ditunno v. Commissioner,* 80 T.C. 362 (1983) overruled *Gentile.* The court rejected the "goods or services" requirement in favor of what it described as a "facts and circumstances test," under which it would look to all the facts to determine whether the taxpayer was engaged in a trade or business. Applying that test, the *Ditunno* court found that the taxpayer—a full-time gambler like Gajewski—was engaged in a trade or business, and therefore that his gambling losses were not subject to the minimum tax.

---

**4.** The *Gentile* court was concerned with the meaning of "trade or business" as that phrase is used in the self-employment tax, 26 U.S.C. §§ 1401, *et seq.* Section 1402(c) expressly provides that "trade or business" shall have the same meaning for the self-employment tax as it does in § 162, which relates to trade or business deductions.

**5.** The version of § 57 applicable to 1976 returns is as follows:

"SEC. 57 [as added by Sec. 301(a), Tax Reform Act of 1969, *supra*]. ITEMS OF TAX PREFERENCE.

(a) *In General.*—For purposes of this part the items of tax preference are—

(1) [as amended by Sec. 301(c)(1)(A), Tax Reform Act of 1976, *supra*] *Excess itemized deductions.*—An amount equal to the excess itemized deductions for the taxable year (as determined under subsection (b)).

\* \* \* \* \* \*

(b) [as amended by Sec. 301(c)(2), Tax Reform Act of 1976, *supra*] *Excess Itemized Deductions.*—

(1) *In general.*—For purposes of paragraph (1) of subsection (a), the amount of the excess itemized deductions for any taxable year is the amount by which the sum of the deductions for the taxable year other than—

(A) deductions allowable in arriving at adjusted gross income.

\* \* \* \* \* \*

exceeds 60 percent (but does not exceed 100 percent) of the taxpayer's adjusted gross income for the taxable year.

The version of § 57 applicable to 1977 returns is the following:

"SEC. 57 [as added by Sec. 301(a), Tax Reform Act of 1969, *supra.*] ITEMS OF TAX PREFERENCE

(a) *In general.*—For purposes of this part the items of tax preference are—

(1) [as amended by Sec. 101(d)(5)(A), Tax Reduction and Simplification Act of 1977, Pub.L. No. 95–30, 91 Stat. 126] *Adjusted itemized deductions.*—An amount equal to the adjusted itemized deductions for the taxable year (as determined under subsection (b)).

\* \* \* \* \* \*

(b) [as amended by Sec. 101(d)(5)(B), (C), Tax Reduction and Simplification Act of 1977, *supra*] *Adjusted Itemized Deductions.*
—

(1) *In general.*—For purposes of paragraph (1) of subsection (a), the amount of the adjusted itemized deductions for any taxable year is the amount by which the sum of the deduction for the taxable year other than—

(A) deductions allowable in arriving at adjusted gross income,

exceeds 60 percent (but does not exceed 100 percent) of the taxpayer's adjusted gross income for the taxable year.

The court below ruled that the present case was indistinguishable from *Ditunno* and entered judgment that no tax was owing. T.C. Memo. 1983–133 (March 14, 1983). This appeal followed.

## DISCUSSION

■ The phrase "trade or business" appears in a variety of contexts throughout the Internal Revenue Code. *See, e.g.,* § 62(1) (adjustments to gross income); § 162 (trade or business expenses[6]); § 174 (research and experimental costs connected with trade or business); § 280A(c)(1) (home office deductions). However, neither the Code nor the Treasury Regulations define that phrase. As a result, its meaning has been left to the judiciary to develop on a case-by-case basis.

The courts have identified a number of requirements that the taxpayer must satisfy to be engaged in a trade or business. One is that the taxpayer be regularly and actively involved in the activity. *See Stanton v. Commissioner,* 399 F.2d 326, 329–30 (5th Cir.1968); *McDowell v. Ribicoff,* 292 F.2d 174, 178 (3d Cir.), *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961); *Daily Journal Co. v. Commissioner,* 135 F.2d 687, 688 (9th Cir.1943). Another is that the taxpayer undertake the activity with the expectation that he will make a profit. *Bessenyey v. Commissioner,* 379 F.2d 252, 255–56 (2d Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967).

Still another requirement—that of "holding one's self out to others as engaged in the selling of goods or services"—finds its genesis in Justice Frankfurter's concurring opinion in *Deputy v. du Pont,* 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940). Although the Court has never expressly adopted the "goods and services" requirement, it has been implicitly approved. For example, in *Snow v. Commissioner,* 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336 (1974), the Court held the "goods or services" requirement inapplicable to § 174,[7] which allows deduction of research expenses, by contrasting that provision with § 162:

"Section 174 was enacted in 1954 to dilute some of the conception of 'ordinary and necessary' business expenses under § 162(a) ... adumbrated by Mr. Justice Frankfurter in a concurring opinion in *Deputy v. Du Pont,* 308 U.S. 488, 499 [60 S.Ct. 363, 369, 84 L.Ed. 416] (1940), where he said that the section in question ... 'involves holding one's self out to others as engaged in the selling of goods or services.' " 416 U.S. at 502–03, 94 S.Ct. at 1878.

■ Similarly, this circuit in *Grosswald v. Schweiker,* 653 F.2d 58 (2d Cir.1981), indicated that we consider the "goods or services" requirement to be part of the law. In construing the meaning of the term "trade or business" for the purposes of the Social Security Act we looked to Internal Revenue Code § 162, as required by 42 U.S.C. § 411(c). With respect to § 162, we stated:

"The theory that a person can be deemed to be carrying on a 'trade or business' only if he 'holds himself out' to the public by offering goods or services originated in Justice Frankfurter's concurring opinion in *Deputy v. du Pont....*

---

**6.** Section 162(a) provides:

"§ 162. *Trade or business expenses*

(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, ...."

**7.** Title 26 U.S.C. § 174 provides in pertinent part:

"*Research and experimental expenditures*

(a) *Treatment as expenses.—*

(1) *In general.*—A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction."

Several circuit court and Tax Court cases have developed Justice Frankfurter's language, which, even though it was a single justice's opinion, has been taken by at least one commentator to constitute the view of the Supreme Court...." 653 F.2d at 59–60.

The specific question in *Grosswald* was whether under the "goods or services" requirement one had to "hold one's self out" to more than one "other." We held that it is sufficient to offer goods or services to only one customer. *Accord, Steffens v. Commissioner,* 707 F.2d 478, 481–82 (11th Cir.1983). *See also, Trent v. Commissioner,* 291 F.2d 669, 670–71 (2d Cir.1961) (Friendly, J.) (implicitly adopting "goods or services" requirement).

A number of other courts have also implicitly or explicitly adopted the "goods or services" requirement. *See, e.g., Weiberg v. Commissioner,* 639 F.2d 434, 437 (8th Cir.1981); *Stanton v. Commissioner, supra,* 399 F.2d at 329; *McDowell v. Ribicoff, supra,* 292 F.2d at 178; *Daily Journal Co. v. Commissioner, supra,* 135 F.2d at 688; *Helvering v. Highland,* 124 F.2d 556, 561 (4th Cir.1942); *Helvering v. Wilmington Trust Co.,* 124 F.2d 156, 158–59 (3d Cir.1941), *rev'd on other grounds,* 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352 (1942). And, of course, the Tax Court prior to *Ditunno* clearly and repeatedly held that selling goods or services was a necessary element of engaging in a trade or business. *Gentile, supra; see also, Gestrich v. Commissioner,* 74 T.C. 525, 529 (1980), *aff'd,* 681 F.2d 805 (3d Cir.1982); *Green v. Commissioner,* 74 T.C. 1229, 1235 (1980); *Barnett v. Commissioner,* 69 T.C. 609, 613–14 (1978); *Fischer v. Commissioner,* 50 T.C. 164, 171 (1968).

Such was the state of the law until February 1983 when the Tax Court issued its opinion in *Ditunno, supra.* There the court overruled *Gentile's* reliance on the "goods or services" requirement, reasoning that it had never been adopted by the courts. Instead, the *Ditunno* court adopted what it called a "facts and circumstances" test

based on the following language from *Higgins v. Commissioner,* 312 U.S. 212, 217, 61 S.Ct. 475, 478, 85 L.Ed. 783 (1941): "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." Looking at all the facts and circumstances in the case before it, the *Ditunno* court concluded that the taxpayer was engaged in a trade or business, and therefore that his deductions for gambling losses were not subject to the minimum tax. In the present case, since Gajewski's situation is the same as that of Ditunno the Tax Court found that the taxpayer was not liable under § 56. It followed that there was no additional tax due under § 6651(a)(1).

In our view the earlier-established "goods and services" requirement rather than the "facts and circumstances" approach is the appropriate minimum standard, assuming the taxpayer's active involvement in the activity with a view to making a profit, for determining whether a taxpayer is engaged in "trade or business." Although the words "trade" and "business" in their broadest sense may refer to any activity engaged in by a person, *Flint v. Stone Tracy Co.,* 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389 (1911); Webster's Third New International Dictionary (1961), pp. 2421–22, 302, they are more commonly viewed as meaning a commercial activity in which a person seeks to earn a livelihood by furnishing goods or services to others for a price. Holding one's self out for such purposes is the universal characteristic of a businessman or trader in a free enterprise society.

The "facts and circumstances" approach does not describe a standard at all; it is instead a predicate for application of a legal test. One must first find the relevant "facts and circumstances" in every case before applying the proper standard to those facts. To describe "facts and circumstances" as a test is therefore to adopt a misnomer; the phrase amounts to a non-test. Once the facts and circumstances are ascertained there remains the problem of de-

ciding upon a fair and reasonable standard for determining whether the taxpayer is engaged in a trade or business.

Nor is the "goods and services" standard inconsistent with *Higgins v. Commissioner, supra,* relied on by Gajewski. In that case the facts and circumstances were that the taxpayer incurred substantial expenses in managing his own investments, including the renting of offices and hiring of a staff. Nevertheless the Court held that his maintenance of records and collection of interest and dividends did not amount to the carrying on of trade or business. The *Higgins* taxpayer, moreover, could not have satisfied the "goods and services" test since he did not sell any securities during the relevant period. *Higgins v. Commissioner,* 111 F.2d 795, 796 (2d Cir.1940), *aff'd,* 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941). In referring to the necessity for "examination of the facts in each case" the *Higgins* Court did not establish a new standard. Nor did it imply that a person not offering goods or services (such as Gajewski) could be carrying on a trade or business.[8]

We therefore hold that in order to be classified as engaging in trade or business for the purposes of 26 U.S.C. § 62(1) a taxpayer must, as a minimum, have held himself out to others as offering goods or services. Such a requirement, in addition to describing the most common characteristic of the trader or businessman, is administratively workable and fair to taxpayers, unlike the amorphous term "facts and circumstances." Application of the requirement to the present case compels the conclusion that Gajewski was not engaged in a trade or business within the meaning of § 62(1) since he gambled only for his own account and did not operate a bookmaking service or place wagers for others. His net losses were therefore items of tax preference subject to the § 56 tax.

We see no principled basis for carving out an exception to the "goods or services" requirement for professional gamblers. That task is more properly the province of Congress than of the courts. Indeed, Congress in 1982 acted to exempt gambling losses from the minimum tax for years beginning after 1982. *See* § 201 of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 411, codified at 26 U.S.C. § 55. This legislation supports our view that the prior law was to the contrary.

The judgment of the court below is reversed. We remand the case for further proceedings in accordance with this opinion.

8. Although the occupation of professional investor who invests for his own account may be similar in some respects to that of a professional gambler, the former does offer goods to others in the sense that he buys and sells securities. *See Fuld v. Commissioner,* 139 F.2d 465, 468–69 (2d Cir.1943); *Levin v. United States,* 597 F.2d 760, 765, 220 Ct.Cl. 197 (1979); *Purvis v. Commissioner,* 530 F.2d 1332, 1334 (9th Cir. 1976).